et al. Mr. A. Holt for the appellant, Mr. O'Neill for the appellate. Good morning, counsel. Mr. A. Holt, please proceed when you're ready. Good morning, Your Honors. Brent A. Holt on behalf of the appellant, John Xereas. Your  Honor, the case is somewhat unusually found itself before this court as a breach of fiduciary case in the District of Columbia. It's initially filed back in 2012, went to trial in 2018 after the breach of fiduciary count 21 in the admitting complaint was dismissed. Eventually, the verdict was entered in favor of my client. The case went up on appeal, partially by my client, and the case was overturned on the dismissal of my client's breach of fiduciary count. That count was thereafter remanded for trial in the District Court. The District Court immediately thereafter, or shortly thereafter, the defendants filed a motion for summary judgment. That is why we're here. The court ruled on summary judgment on two bases. First, that the damages presented on behalf of Mr. Xereas would essentially amount to double recovery of the first trial damages. Secondly, there was no evidence of either a breach or approximate cause of damages. On both counts, on both rationales before the hearing, there was ample evidence for the District Court to allow the case to go forward to trial in There was a report that was submitted as part of the defendant's motion for summary judgment. Hundreds of pages of a report of the evidence of his breach of fiduciary duty. Essentially, it was $6 million in unaccounted for funds in the LLC. Those funds to which my client would have been entitled to his pro rata share had these funds properly been in the LLC. That is why we're here today. Because these funds, undisputed and unrefuted testimony and report that these funds were improperly accounted for, that they should have been in the LLC, that Mr. Xereas was entitled to his share of these funds, and there are that is a proper basis and proper support for the breach of fiduciary account. There is no dispute in this case that the defendants were in control of the LLC. The defendants, Heiss and Dawson, were in control of the LLC. They were managing the LLC. They were in control of these funds. They were coming into the LLC on a daily basis throughout the course of the events leading up to trial. There is undisputed evidence based on the unrefuted report of Mr. Morrisey that these funds were missing. $6 million were missing. These funds were undoubtedly because of the failure of the defendants to safeguard them. They were missing. On the double recovery issue, I apologize. On the double recovery issue, the first verdict at trial was $106,000. $106,000. $600,000 based on a failure to pay for work done. That was later reduced to $35,000. Now, when you say failure to pay for work done, I am looking at paragraph 285 of the complaint. And the claim here is the plaintiff has suffered damages caused by the breaches, including but not limited to loss of salary, compensation, earnings. That all seems to be one thing, more or less. And proceeds from the operation of the LLC. And so whatever the damages returned apparently were meant to cover not only his wrongful termination damages, but his loss of proceeds from the operation. That would be correct, Your Honor. It would also be legitimate proceeds. Okay, well then in that case, he's already recovered. No, he has not recovered, Your Honor. The specific damages that he seeks for this breach of fiduciary are not necessarily the proceeds from the operation of the LLC that would have been coverable under the breach of contract. They are in fact the proceeds that were unaccounted for by Pace and Dawson that are in the Morsi report. The Morsi report significantly was specifically stricken by the district court before the jury was able to rule. Right, so the Morsi report was not before the jury. Not before. And the jury made an award based on the complaint. Based on the allegations of the complaint and the evidence presented at trial. Yeah, but without the Morsi report, what was the evidence at trial bearing on the problems suggested by the Morsi report? There was no additional evidence based on those issues that are contained in the Morsi report. That's the problem. They couldn't have, Mr. Aziris could not have recovered these same damages at trial the first time because there was no evidence from which the jury could have based their finding at the first trial on these same damages. Just your allegations. There were allegations in the complaint, but you can have allegations in a complaint that are thereafter not supported by evidence at trial because the jury does not hear that evidence. Right, and that seems to be what happened. You got the allegation, pardon me, you got an award based on the claims for loss of salary, etc., and loss of proceeds from the operation. Certainly, Your Honor. And, you know, you plead in the alternative. So what is the latter? What is the latter if it's not the money? Your Honor, had that evidence been presented at the first trial, it could have been proceeds from the operation. But because it wasn't, and because the plaintiff proceeded to trial on that breach of contract claim, it would have been, you know, something else could have been duplicative of the damage, the loss of salary and compensation. You know, these are broad terms when you say compensation. That could be distributions, that could be salary, things like that. Compensation comes in various forms, but the question for this court is what evidence was presented at trial. And the evidence that we know that was not presented because it was stricken by the district court at the first trial was the Morrissey Report, which the plaintiff is now relying on. It was contained in defendant's motion to summary judgment and has never been heard by any fact finder. So it is literally impossible for the Morrissey Report to be double recovery. If my client were to go to trial a second time and receive everything in the Morrissey Report, the Morrissey Report, as he's entitled to, with regard to these lost funds, there's some other things that are related to trademark issues and things like that that we're no longer claiming. But just with regard to the breach of fiduciary duty account, if my client were to recover all of those funds, which are about, I believe, $1.5 million are his share of those, that would consist of nothing, absolutely zero amounts that were claimed at the first trial because, quite frankly, the court both dismissed the breach of fiduciary account and limited the evidence. When you're arguing that the court erred in granting summary judgment on the ground that your client had not shown evidence of a breach of fiduciary duty, are you arguing that the Morrissey Report should have been admitted? I don't think so. I think that's come and gone, correct? No, the Morrissey Report will be used at the second trial. I see. Okay. So? And it's, in fact, used as evidence at the summary judgment stage, in this case, unrefuted. If Your Honor should finish. So, go ahead. With regard to the district court ruling on the evidence of breach causation, the district court seemed very concerned that there was no direct evidence of self-healing. And the district court's correct that there's a—well, no, I won't say that. The district court's not correct that there's a direct evidence. I think there potentially is direct evidence, but you have to draw an inference from that direct evidence. However, what we certainly have is circumstantial evidence. We have two parties that are in control of an LLC, have an LLC that is clearly missing substantial funds, and we have no explanation for why these funds are missing. We have a forensic accountant reporting there were severe irregularities, red flags, there were missing funds, that there was improper accounting, that it fell below IRS standards, that it fell below the standards in the LLC agreement. And there's no explanation for this. Can I just ask you—I know we're short on time, but let me just ask you—on the Morrissey Report, the report says that it was meant to calculate damages but not to determine liability. So then how does the Morrissey Report feed into whether there was a breach of fiduciary duty? So he was not going to be a determiner of liability. However, his findings are evidence of liability. So while he is not hired to assess liability to come to a conclusion as to liability, his findings that there are substantial unaccounted for funds missing from this LLC are evidence of the breach of fiduciary. It is the duty under the District Code for the member managers to account for all of the funds in the LLC. Morrissey's opinion, his report, shows that they did not account for all of the funds in the LLC. And it calculates those, and that's his role as a forensic accountant, to assess what happened here. Well, I mean, there may be funds missing. So then that would tell you that it's possible that the reason funds are missing is because there's a breach of fiduciary duty. It's also possible that the reason funds are missing is something entirely unrelated to a breach of fiduciary duty. Absolutely, Your Honor, and that is the very standard that should have been applied, that there are two reasonable conclusions that could be reached by this report. I didn't necessarily say that either of those conclusions was reasonable or not reasonable. I'm just spanning the spectrum of possibilities. And then you have to have enough evidence in the record to create a genuine issue on whether there's been a breach of fiduciary duty. Yes, so Morrissey's report absolutely does create a genuine issue. It's unrefuted, quite frankly, Your Honor. If the funds are missing, which they are, according to the record on summary judgment, if the funds are in fact missing, Morrissey gives various reasons for that. There's not proper receipts for third-party expenditures. There's unaccounted for cash withdrawals that aren't attributed to him. All these things are irregularities. There's no dispute that the funds are missing because there's been no effort to rebut that funds are missing. There is no dispute. So thereafter, you have an analysis that brings you to the two people in control are fiduciaries. They did not account for these missing funds. Therefore, a reasonable conclusion to reach is that there is either gross negligence or they're intentionally self-dealing, one of the two. That is a reasonable conclusion that a fact-finder could reach based on these facts before the court at summary judgment, both on inference, circumstantial evidence. You don't need to have an instance where you say, aha, we found it in the defendant's account. That obviously is direct evidence. You see the paper trail where it goes. This is summary judgment. Even at trial, we wouldn't need that for a motion. At least for some of these funds, when they went missing, was your client still in control? Is my client in control? For a portion of these funds? No. So all the funds in the Morrissey report are funds that went missing after your client was out of control? Yes. After Dawson, I basically removed him from any control. I know we're short on time, so unless there's any further questions. Sure. Okay, we'll give you a little bit of time for rebuttal. Thank you. Mr. O'Neill. May it please the Court, William O'Neill for Defendant Marjorie Heiss, Jeffrey Dawson. I'm going to address Mr. Morrissey's report in just a second. There's a few things, preliminary matters I wanted to mention. The district court in this case granted summary judgment on three different bases, three different legal reasons. The duplication of damages, the lack of any evidence of breach of fiduciary duty, and the lack of any evidence linking such a breach to the damages. So approximate costs. Yes. On any one of those three grounds, if this Court finds that the district court's action was proper, then the judgment below would be affirmed. So we don't need to win all three. Any one of those reasons would be sufficient. I'm going to jump now to Mr. Morrissey's report because I think the plaintiff here has been fundamentally misrepresenting this report for years now. What Mr. Morrissey actually did was he took the LLC's QuickBooks accounting, pulled out every invoice that was captured in the LLC's accounting records, looked to see if an invoice had been produced during the litigation. And if he didn't find that invoice, he put it in the bucket of an unsupported expense. That is the entire exercise. He did it on different areas. He looked at the business had an ATM bank. They would take money out of the bank account, put it in the ATM. Funds would circle back into those accounts. And because the LLC did not have a record from the bank every time it took cash out of that account to put into the ATMs that were in the bar, he said those were unsupported. They then say that these are missing records. And there's one simple fact that refutes that statement. We asked one of the vendors for the company, Adams Birch. We gave them Mr. Morrissey's report. It listed $150,000 worth of invoices from Adams Birch. And we asked Adams Birch, what's going on with these invoices? Are these real? Did somebody create fake invoices? And they said every one of those invoices were for work or products that we delivered to the bar. Every one was paid by the LLC. And every delivery was made that they paid for. And when I asked Mr. Morrissey in the supplemental appendix, we included the examination of Mr. Morrissey in the first jury trial where I asked him, does the Adams Birch testimony change your opinion? Those expenses are real. The vendor says they're real. The company says they're real. Does that change your opinion? He said, no, absolutely. It doesn't change my opinion at all. What Mr. Morrissey actually put together was a theory in search of fact. When plaintiff, Mr. Zareas' counsel stands here and says the funds are missing, they have no factual basis for that statement at all. There was no examination of Mr. Dawson's accounts, no examination of Mrs. Heise's accounts. There was never even an allegation that they took money out of the LLC. In fact, the record shows that Mr. Dawson put $800,000 of his own money into the LLC after removing Mr. Zareas just to keep the business afloat. And he's kept it afloat for the last 12 years. So when they say funds are missing, that is a factual inaccuracy. But does Morrissey say that funds are missing? He does not state that. He says only that this expenditure from the company's books doesn't have secondary value. That is the full extent of his opinion. And I recommend to you in the lower court, before closing arguments, we had moved to strike Mr. Morrissey several times. There was a voir dire before Judge Robinson as to whether he would be allowed to testify. And prior to closing arguments, I again moved to strike Mr. Morrissey's testimony, just his testimony. The court was never interested. And at pages 182 through 186 of the appendix is the colloquy between myself, Judge Robinson, and counsel for plaintiff John Zareas. And the first thing Judge Robinson has struggled with is the same thing they're doing here. They wanted to argue inferences with respect to the breach of contract. The breach of contract claim was the only one of the 26 claims that Mr. Zareas originally had in the Second Amendment that survived to the jury. So the jury was only considering breach of contract. Judge Robinson first said to counsel for the plaintiff, I can't let you argue any inferences from Mr. Morrissey's report. You can't argue any inferences that a contract was breached based on what Mr. Morrissey testified. We then took a break before closing started. And when the parties came back before the judge, she said she'd been thinking about it for an hour, and she didn't see any basis for Mr. Morrissey's testimony to be argued in closings at all. And what plaintiff's counsel said then was that they had voluntarily taken out all references to Mr. Morrissey from their closing. They didn't object to the judge's suggestion that he would be stricken, and instead they voluntarily withdrew his testimony. But even then, plaintiffs were admitting that Mr. Morrissey's testimony had no value, no probative value, with respect to the breach of contract. I would argue that the same is true here. The breach of contract claims and the breach of fiduciary duty claims are coterminous. They arrive from the same set of facts. Judge Wilkins, in the earlier decision, made that observation when he warned the district court on remand not to award duplicate damages. He noted that the breach of fiduciary duty claims relied, in their actual breach of fiduciary duty claim, they refer to all 300 paragraphs of the Second Amendment complaint as the basis for their breach of fiduciary duty. That includes, as we pointed out in our briefing, disagreements over the beer cert. You know, every mundane thing that they threw into the Second Amendment complaint, they were alleging was a breach of fiduciary duty. And so, those same things, as Judge Wilkins recognized, were the basis for the breach of contract. For that reason, Judge Wilkins recommended that the district court look hard at whether they were asking for the same damages. They received from the jury all of the damages they sought for breach of contract. We're now coming in with a new theory, Mr. Morrissey's report. Let's not call it a new theory for purposes of this discussion. A new theory. And what Judge Wilkins said was, you can come in with a new theory if you've already been paid your damages for a claim. And you restyle the claim and restyle the damages. It doesn't matter. You've already been paid. So, I think that's an important point to consider. And the fact that Mr. Morrissey's report has already been examined closely by two district courts, both of them have found it wanting evidentiary value. As Judge, in this action on summary judgment, pending for the district court after reading, he said, Judge Morrissey didn't apportion any liability. He didn't include any assessment of what these discrepancies meant, apportioned liability, or alleged self-dealing by defendants. Judge Robinson concluded the same exact thing. of Mr. Morrissey's testimony. So, every time they say that funds are missing, they don't have any evidence that funds are missing. They only have Mr. Morrissey's statements that compared discovery in this case to the LLC's own books, and I didn't find a backup invoice. As the district court here determined, sloppy bookkeeping is not a breach of fiduciary duty. One of the first bases that the district court used to grant summary judgment was the lack of any breach of fiduciary claims supporting a breach of fiduciary duty. And when that issue was raised on our motion for summary judgment, they came back with quotations from the second amended complaint and Mr. Morrissey's report. It's patently obvious that claims from statements included in the second amended complaint are not evidence. They're allegations. The judge dismissed those wholeheartedly. With respect to Mr. Morrissey's, he reached the same conclusion. Mr. Morrissey's report and testimony did not amount to evidence of a breach of fiduciary duty. Looking backwards from Mr. Morrissey's... So, did you dispute the breach of fiduciary duty? Because it's... In our motion? Yes, Your Honor. The first thing we did was question what the plaintiff intended was the breach of fiduciary duty. As I said, when we looked at the second amended complaint, he said every fact alleged in there was a basis for a breach of fiduciary duty. So, our motion questioned what was the breach of fiduciary duty and what was the... What was that in the appendix? Well, the first heading in our motion, Your Honor, was the plaintiff lacks evidence of damages approximately caused by any alleged breach. But with respect to... Where are you? Where are you reading from? The appendix page 213, 217, and 219 bring up duplicate payments, the lack of any evidence of breach of fiduciary duty, and lack of approximate damages. So, and... Right, but... A further fact... Approximate cause is different from the element of breach. Correct, correct. So, on the element of breach... Yes, we questioned... You just read the heading, which was, I think, is that on 217? Plaintiff lacks evidence of damages approximately caused by defendant's alleged breach of fiduciary duty. Well, Your Honor, we questioned what they believed was the breach of fiduciary duty. And in their response to our motion, they devoted multiple pages to laying out what they thought the breach of fiduciary duty was. Well, they might have done that. So, that's a different issue. I'm just wondering, just as a factual matter, did you dispute the element of breach? I believe we did, Your Honor. Where? We raised that issue. We raised the issue of duplicate payments. We raised the issue of breach. But duplicate payments is also different. Yes. On the question of breach, where... Just point me. Just show me in the appendix where you disputed breach. I'm not saying you necessarily lose because of this. I'm just wanting to know where. I have references to pages 217 and 219 of the appendix. Okay. And where on 217? Because what 217 says is, Plaintiff lacks evidence of damages approximately caused by defendant's alleged breach of fiduciary duty. That 217 is the reference to approximate cause. Right. 219. Okay, so 217, just to break it down. Correct. You said 217 and 219. It turns out 217 actually doesn't have anything. It was the second part of the breach of fiduciary duty and lack of approximate cause. So 219, I believe, is a question. It's raising the question of what they contend the breach of fiduciary duty is. Where's that on 219? Unfortunately, Your Honor, I don't have the appendix in front of me. I just have my notes. Do you have it with you at all? No. I see. Well, can I get your reaction to this sentence, which is on 217? Even if the act of removing Zarius as a managing member could be found to be a breach of fiduciary duty, Zarius is still required to produce evidence of damage different from the damages he collected. I'm not sure that that's enough to get you over the line in terms of saying there was no breach, but what's your argument for why that was enough of a challenge? Because we were left in the dark as to what he contended was an actual breach of fiduciary duty because he alleged everything was a breach of fiduciary duty. His brief seems to suggest that we were obligated to come in and present admissible evidence on each of those 300 allegations and say that that's not a breach. Instead, what we did was put him to his proof by raising the question of what is the breach of fiduciary duty and putting the duty on him, who's got the burden of proof at this point, to come in and tell us what it is. Where's the evidence of a breach of fiduciary duty? In a large part, we were in an impossible situation to come in and present evidence on 300 different ideas. And the fact that they spent pages 794 to 95 talking about what the actual breach of fiduciary duty was in their briefing suggests, at least to me, Your Honor, that the issue was properly raised before the court. The opposing party responded to it, and the judge quite rightly addressed it in the summary judgment. It's not the most natural. It strikes me as not the most natural means of preserving a breach of fiduciary duty claim to begin an argument with even if there was a breach. Your Honor, I'm not going to say I haven't gone back and read some of my motions a year later and tried to figure out exactly. That could have been clearer. I will acknowledge. But we were attempting to challenge each element of both. Our emphasis certainly was on the damage. Yeah. But we at least raised the issue, we believe, significantly enough to put the plaintiff on notice. And he responded to that. Yeah, and you got a decision in your favor on it, too. Yes. And I take all that. Okay. All right. Let's see if my colleagues have additional questions for you. Thank you very much. Okay. Thank you. Mr. O'Neill, Mr. Ahold, we'll give you two minutes for rebuttal. Thank you again, Your Honor. I just want to briefly address the sum and substance of counsel's argument attacking the credibility of the Morsi. And I understand why they do that. They're entitled to do that. However, not on summary day. That is an issue for trial. The credibility of the Morsi. As far as the plaintiff's counsel at trial, whether or not they somehow waived the issue of the striking of the Morsi, the record's very clear that they did not. They preserved that issue at trial. And that they did not intentionally not submit Morsi to the jury in that case. And that's important in the double recovery. They were prevented from presenting that argument. Now, there is, I will concede that there is a segment where counsel for the plaintiff said that we are withdrawing our arguments after the court had already ruled that certain claims and counts were ruled on as a matter of judgment. Counsel considered it and said, well, it's probably not relevant to the remaining count based on the court's prior rulings. But then, very clearly, even after that concession, that they were not going to raise it at argument, the court separately struck the entirety of the testimony of Mr. Morsi. So there's no question that that testimony was not presented first. And it wasn't a judgment as to the credibility of the testimony. It was a judgment as to the relevance of the testimony at the first trial. So to say that this court has twice determined that the report was essentially worthless, I think is a misstatement. The judge actually allowed the jury to hear the testimony because she gave it credibility. But then later, after her rulings limiting the claims, struck the testimony as no longer relevant for the jury to hear. And with that being said, Your Honor, this case has been going on for 12 years now, I believe, not quite 12, 11 years. It's been up on appeal once. It's gone back down that once on a successful appeal.  That's what this court ruled last time. There is no reason in this motion or in this opinion that that testimony of Mr. Morsi should not see the light of the jury. They can determine. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Walker, Ginsburg